UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAMIRO GRANADO,<br><br>               Petitioner,<br><br>v.<br><br>RANDY BLADES, Warden, and OLIVIA CRAVEN, Director,<br><br>               Respondents. | Case No. 1:13-cv-00276-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

       This case was reassigned to this Court to consider dismissal pursuant to 28 U.S.C. § 2243 and Rule 4 of the Rules Governing § 2254 Cases. Chief Magistrate Judge Candy W. Dale entered an Initial Review Order on November 4, 2013, determining that Petitioner's case was subject to dismissal for failure to state a claim upon which relief can be granted. Petitioner filed an Objection, or Motion to Reconsider, on November 18, 2013.

      Respondent was ordered to file a response to the Motion to Reconsider. (Dkt. 9.) The question of whether Petitioner's claims are subject to summary dismissal is now fully briefed. Having reviewed the record, including the state court and administrative records submitted by the parties, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would

**MEMORANDUM DECISION AND ORDER - 1**

not be significantly aided by oral argument. Therefore, the Court will decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order dismissing and denying the Petition for Writ of Habeas Corpus.

## CONSIDERATION OF HABEAS CORPUS PETITION

1. **Introduction**

In 2003, Petitioner pleaded guilty to lewd conduct with a minor. (Dkt. 9-1, State's Exhibit A-1.) The charges arose from Petitioner's acts of engaging in sexual intercourse with his family's 14-year-old female babysitter twice. Assessments of Petitioner conducted after his guilty plea indicated he had a prior sexual history with the victim. (Dkt. 9-3, p. 33.) Petitioner and the victim had been using alcohol on both occasions when sexual intercourse occurred; it was unclear whether Petitioner supplied her with alcohol, or she obtained it from another source. (Dkt. 9-3, p. 32.)

On the day Petitioner had sex with the victim for the second time, she disappeared. Eventually, the victim was found dead in a pond. The prosecutor described her body as having "a black eye, shirt ripped off, pants undone," and a "blood-alcohol [level] over .1%." (*Id.*, p. 33.) It was clear that the victim's physical injuries did not cause her death. (*Id.*) Petitioner was not implicated in the death, but was not particularly helpful when questioned by law enforcement when the victim went missing. Petitioner was sentenced to a unified term of 20 years for the lewd conduct conviction, consisting of 8 years fixed and 12 years indeterminate. (*Id.*)

Near the end of his fixed term, Petitioner applied for parole. In 2010 and 2012, he was denied parole. In 2014, his parole status was reviewed again, and he was passed to his full-term release date.[1] He challenged his 2010 and 2012 parole denials by filing a petition for writ of habeas corpus in the state district court (Dkt. 1, p. 3.) Petitioner's underlying contentions were that the Idaho Commission of Pardons and Parole (ICPP) denied him a tentative parole release date for the sole reason that he has not completed the Idaho Department of Correction (IDOC) Sex Offender Treatment Program (SOTP) while incarcerated, and that the ICPP has altered its records or prepared them in a intentionally misleading way to attempt to show that there were other reasons for the parole denial.

In the state habeas corpus case, the State filed a motion for summary judgment, providing affidavits and parole records to support its arguments. The State argued that there was no liberty interest in parole, and that the ICPP decision need only bear a rational relationship to rehabilitation or deterrence. The State also asserted that Petitioner's impossibility argument was not based in fact, because (1) he was denied parole for reasons other than his inability to complete sex offender treatment, and (2) the

---

[1] In 2014, parole was not recommended by James Keller, Parole Hearing Officer, after an interview of November 20, 2013. Petitioner was passed to his full-term release date of July 1, 2022, but was notified that he could submit appeals in the form of a Self-Initiated Progress Report, beginning six months after the parole hearing. (Dkt. 10-2. p. 14-15.) Petitioner has not alleged that he has exhausted any claims regarding the new denial, and the complete records for the 2014 denial have not been submitted to this Court. Therefore, the 2014 denial is not at issue here, except to the extent that Petitioner's claims remain the same—that his parole denial is based solely on the fact that he cannot gain entrance into the SOTP. Petitioner's recent allegations that the 2014 denial is a retaliatory act cannot be adjudicated in this action, but must be brought in a civil rights, if, in fact, Petitioner has evidence other than timing that suggests a retaliatory motive.

**MEMORANDUM DECISION AND ORDER - 3**

lack of a tentative parole date was not an automatic bar to gaining entrance into the SOTP. (Dkt. 9-2, State's Exhibit B-4.)

The state district court granted the motion for summary judgment and denied the petition on the merits on February 13, 2013. (Dkt. 9-3, State's Exhibit B-11.) Petitioner filed a notice of appeal, but the state district court would not grant him permission to proceed in forma pauperis on appeal, discussing the merits of the claims and determining that the appeal was frivolous under I.C. § 31-3220(4). (Dkt. 9-4, State's Exhibit C-4.) The Idaho Supreme Court issued an order to Petitioner to show cause why his appeal should not be dismissed as frivolous. (Dkt. 9-4, Exhibit C-5). Petitioner filed a response to the order, addressing the merits of his claims. (Dkt. 9-4, State's Exhibit C-6.) After considering the response to the order to show cause, the Idaho Supreme Court dismissed the appeal. (Dkt. 9-4, State's Exhibits C-7, C-8.)

Petitioner brings the following claims arising from his denial of parole in his federal Petition for Writ of Habeas Corpus, as clarified by his Objection or Motion to Reconsider:

1. He was denied due process of law because the ICPP refuses to provide him with audio tapes of the parole hearing that would prove his claim—which is that the reasons the ICPP gave at the hearing for denial of parole are different from the reasons set forth in the written Minutes. (Dkt. 1, p. 4.)

2. Petitioner has a liberty interest in being released on parole. (Dkt. 5, pp. 3-4.)

3. IDOC and ICPP policies and practices prevent him from obtaining a tentative parole date until he participates in sex offender treatment, but he is prevented from participating in sex offender treatment until he obtains a tentative parole date, creating a "Catch 22" situation that has rendered it

> impossible for him to obtain release on parole, in violation of his constitutional rights. Petitioner alleges that he was denied entry into the SOTP because he did not have a tentative release date, and that he was denied a tentative release date because he had not completed the SOTP (Dkt. 1; Dkt. 5, p. 2.)

4. Petitioner alleges that he was denied his First Amendment and Fourteenth Amendment rights to access the court when the appeal of his state habeas corpus action was denied because of his poverty. (Dkt. 1; Dkt 5, p. 3.)

**2. Standard of Review**

A petition for habeas corpus relief under 28 U.S.C. § 2254 must allege that the petitioner is held in custody under a state court judgment and that such custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2254(a). When a person is detained under a state court conviction, 28 U.S.C. § 2254 remains the proper provision governing habeas corpus relief, even if the petition challenges a state administrative decision, such as revocation of parole. *Shelby v. Bartlett*, 391 F.3d 1061 (9th Cir. 2004).

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). The Court will assume, for purposes of this Order, that Petitioner's claims are exhausted properly, for the reasons explained below. The claims in the Petition will be dismissed for failure to state a claim upon which relief can be granted or denied on the merits.

    **A.** *Standard for Dismissal of Claims - Summary Dismissal*

**MEMORANDUM DECISION AND ORDER - 5**

The Court is required to review a petition for writ of habeas corpus upon receipt to determine whether it is subject to summary dismissal. Rule 4 of the Rules Governing Section 2254 Cases. Summary dismissal is appropriate where "it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id*. The Court has reviewed Magistrate Judge Dale's recommendations in the Initial Review Order, Petitioner's Objections, Respondent's Response, and the portions of the state court record presented by the parties.

B.     *Standard for Denial of Claims - AEDPA Review*

The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to petitions for writ of habeas corpus filed after April 24, 1996. To obtain federal habeas corpus relief from a state detention decision, where the facts are not at issue and the petitioner is asserting that he is entitled to relief as a matter of law, the petitioner must show that the state court's decision on the merits of his federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In Petitioner's state habeas corpus matter, the state district court decided Petitioner's claims on the merits, and the Idaho Supreme Court dismissed the appeal. As a threshold procedural issue, the Court must determine whether the decision of the Idaho Supreme Court dismissing the petition after issuing an order to petitioner to show cause

why his appeal should not be dismissed on grounds of frivolousness is a decision on the merits subject to AEDPA.

In *Harrington v. Richter*, 131 S.Ct. 770, 783 (2011), the United States Supreme Court instructed federal courts to presume that an unexplained state court denial of a claim presented for federal habeas relief is a decision "on the merits" within the meaning of § 2254(d), unless 'there is reason to think some other explanation for the state court's decision is more likely." *Id*. at 784-85 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991)). *Harrington* also instructed the federal courts to "determine what arguments or theories supported or . . . could have supported, the state court's decision" and then "whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Id.* at 786.

Because the procedural posture of this case is analogous to that in *Harrington*, the Court concludes that it should analyze the Idaho Supreme Court's decision to dismiss Petitioner's case on grounds of frivolousness as a decision on the merits. Therefore, *Harrington* requires that the Court determine which arguments or theories could have supported that decision, and whether any fairminded jurist could disagree whether those arguments or theories are consistent with United States Supreme Court precedent. In other words, *Harrington* requires that, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well

**MEMORANDUM DECISION AND ORDER - 7**

understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

3.     **Discussion**

   A.     *Failure to Provide Audiotapes of Parole Denial Hearing and Liberty Interest in Being Released on Parole*

Petitioner's first claim is that he has a right to obtain audiotapes of the parole denial hearings from the ICPP to prove that he was denied parole based only on his failure to complete sex offender treatment. This claim is cognizable only if he can show that his second claim merits relief—that he has a liberty interest in being released on parole.

The law is clear that there is no federal constitutional right to parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Swarthout v. Cooke,* 131 S.Ct. 859, 862 (2011). Therefore, an inmate can bring a procedural due process challenge to a parole decision only where there is a "state-created" liberty interest in parole. *See Board of Pardons v. Allen*, 482 U.S. 369, 380-81 (1987); *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

In *Banks v. State of Idaho*, 920 P.2d 905 (Idaho 1996), the Idaho Supreme Court addressed the liberty interest question. The court relied on the Idaho sentencing statute, I.C. § 19-2513, which uses the nonmandatory words "[t]he offender may be considered for parole or discharge at any time during the indeterminate period of the sentence." The *Banks* Court held that, as a result of the statutory language, in Idaho "parole is not an

**MEMORANDUM DECISION AND ORDER - 8**

automatic right or liberty interest." *Id.* at 908. The *Banks* Court acknowledged the existence of I.C. § 20-223, which governs parole commission decisions and contains the phrase "a parole shall be ordered when. . . ." However, the court did not find the statute's "shall" language controlling in the liberty interest analysis. Rather, the Idaho Supreme Court relied on the sentencing statute, I.C. § 19-2513, finding that it does not contain mandatory language, but instead states that "[t]he offender *may* be considered for parole or discharged at any time during the indeterminate part of the sentence."

More recently, the Idaho Court of Appeals directly considered the language of the parole statute, I.C. § 20-233, and determined that a grant of parole is discretionary, not mandatory:

> Idaho Code Section 20–223(c) states that "parole shall be ordered when, in the discretion of the commission, it is in the best interests of society, and the commission believes the prisoner is able and willing to fulfill the obligations of a law-abiding citizen. Although the subsection directs that parole be granted when it is in the best interests of society and the prisoner is willing to fulfill the obligations of a law-abiding citizen, that determination is a discretionary decision of the Commission that does not vest in the prisoner a legitimate expectation of parole, but rather a mere possibility of parole. *Vittone*, 114 Idaho at 620, 759 P.2d at 911.

*Burghart v. Carlin*, 264 P.3d 71, 73-74 (Idaho Ct. App. 2011).

The Court is constrained to decline Petitioner's invitation to revisit the holdings of *Banks* and *Burghart* to find a state liberty interest in parole. It is well recognized that "a State's highest court is the final judicial arbiter of the meaning of state statutes." *Sass*, 461 F.3d at 1127. In addition, a determination of state law by a state intermediate appellate court is also binding upon the federal court. *See Hicks v. Feiock*, 485 U.S. 624,

**MEMORANDUM DECISION AND ORDER - 9**

629–30 & n. 3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

Here, Petitioner's argument is based on a disagreement over state law interpretation, and not on a question of federal law, and, thus, it cannot be the basis of a federal habeas corpus action. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Federal habeas corpus relief is "unavailable for alleged errors in the interpretation or application of state law." *Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir.1994); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

In rare instances, a federal court may review a state court's interpretation of state law only when the state court's interpretation is (1) "untenable," meaning "incapable of being maintained or supported," and (2) "amounts to a subterfuge to avoid federal review of a constitutional violation." *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir. 1982); *see Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975). That exception is not applicable here.

The Idaho Supreme Court's rejection of the liberty interest analysis under the sentencing statute is not untenable, because the sentencing statute is the foundation for all types of state custody during a sentence, including parole, and the sentencing statute addresses parole in permissive language. As to the parole statute itself, the "shall" mandate of the statute arises only *after* the ICPP has, in its discretion, determined that parole is appropriate. Thus, the Idaho Court of Appeals's interpretation is not untenable.

**MEMORANDUM DECISION AND ORDER - 10**

In addition, rather than being a "subterfuge to avoid federal review of a constitutional issue," state criminal sentences and parole terms are uniquely within each state's province, and whether a state has built into its sentencing and parole scheme a "state-created" liberty interest is a feature of state law, not a federal issue. *See Greenholtz*, 442 U.S. at 7; *Swarthout,* 131 S.Ct. at 862.

The *Banks* and *Burghart* decisions foreclose Petitioner's ability to bring a due process claim arising from denial of parole in a federal habeas corpus action. Therefore, the claim to obtain audio tapes of the parole denial hearings fails to state a claim upon which relief can be granted, as does any claim to revisit Idaho's decision on the liberty interest question.

Implicit in this claim is Petitioner's assertion that his parole was wrongfully denied, and, if he could obtain audiotapes of the parole hearings, he could prove that his parole was, in fact, denied for the sole reason that he had not completed sex offender treatment. Petitioner asserts that the ICPP parole hearing records were altered to reflect that his parole was denied for reasons other than the sole reason the ICPP Board verbalized at the hearings.

However, the lack of a state-created liberty interest prevents not only review of the procedural due process claim centered on alleged discrepancies between the parole audio tapes and the written record, but it prevents review of the denial of parole. The Court is constrained by the habeas corpus statute to review only issues of federal law. It is of no consequence to this federal habeas corpus action that the Idaho Supreme Court has

**MEMORANDUM DECISION AND ORDER - 11**

determined that *state* habeas corpus review is available for parole denials and has adopted as the basis of state judicial review the federal minimal due process standards of *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445 (1985),[2] despite the Idaho Supreme Court's ruling that there is no liberty interest in parole in Idaho. In other words, just because the Idaho courts review Idaho's own parole decisions, borrowing a federal standard, does not transform these claims into federal questions. *See Swarthout*, 131 S.Ct. at 861. Here, because there is no liberty interest, a federal habeas court cannot reach either the question of whether proper due process was afforded in a parole hearing, or whether parole should have been granted.

      **B.**     *Denial of Entry into SOTP*

Petitioner also argues that IDOC and ICPP policies and practices prevent him from obtaining a tentative parole date until he participates in sex offender treatment, but he is prevented from participating in sex offender treatment until he obtains a tentative parole date, creating a "Catch 22" situation that has rendered it impossible for him to obtain release on parole, in violation of his constitutional rights. (Dkt. 1; Dkt. 5, p. 2.) While the Court has determined that there is no liberty interest in parole, which precludes federal habeas corpus review, even if Petitioner could bring his claim, it would be subject to denial for failure to meet AEDPA's high standard.

The state district court rejected this claim based on the parole records:

---

[2] That case determined that decisions cannot be arbitrary and capricious, but must be supported by "some evidence in the record." 472 U.S. at 454.

**MEMORANDUM DECISION AND ORDER - 12**

> The court finds that there is a rational basis in the record for the commission's denials of the petitioner's parole requests. The seriousness of the crime, the petitioner's institutional history, and the commission's concerns for the protection of society, along with the other reasons set forth in the minutes of the parole hearings, provide rational reasons for the commission's decisions. The minutes do not support the petitioner's assertion that the only reason he was denied parole was because he had not completed sex offender treatment.

(Dkt. 9-3, State's Exhibit B-11, p. 6.)[3]

The state district court further noted that there is no constitutional right to receive certain treatment or programming or to be paroled after the completion of the fixed term of one's sentence. (*Id.*, pp. 6-7.) The district court cited to the Rules of the Commission of Pardons and Parole, which provide that: "[p]arole determination is at the complete discretion of the commission." (*Id.*, p. 6, citing I.D.A.P.A. § 50.01.01.250.01(a)-(c).)

Petitioner's novel claim—that the State cannot provide for parole and then make the qualifications for parole impossible to fulfill—is subject to denial because he has not pointed to, and the Court has not found in its own independent research, any United States Supreme Court precedent to support his position. *Greenholtz* and *Swarthout* have

---

[3] To the extent that Petitioner is alleging that the state district court's findings of fact are erroneous because the hearing minutes do not exactly match the content of the oral statements made during the hearing, his allegation is unsupported by his contradictory assertions in the record. Petitioner has alleged: "When the Petitioner appeared before the Parole Board, the Board informed the Petitioner, '. . . it is not you, Mr. Granado, it is because you have not been allowed to be enrolled in the sexual offender program. This is the reason[] that you are not being granted a parole.'" (Dkt. 9-2, p. 6.) Petitioner has also alleged: "At no time did the Board ever state that the Petitioner would be granted a parole if he took the program; but the Board also did not state that the Petitioner would not be paroled if he took the program." (Dkt. 9-4, p. 27.)

**MEMORANDUM DECISION AND ORDER - 13**

made it abundantly clear that there is no federal right to be released on parole prior to the expiration of one's sentence.

Lower federal courts, including this Court, have entertained the theory that circumstances rendering parole impossible could "affect the length of a sentence," which arguably brings the claim within the reach of habeas corpus law. *Sheppard v. State of Louisiana Board of Parole*, 873 F.2d 761 (5th Cir.1989) (pre-AEDPA); *Watkins v. Idaho Bd. of Pardons and Parole*, 2008 WL 544843 (D. Idaho 2008). However, under AEDPA, Petitioner must still show that no reasonable jurist would disagree with his position that the Idaho Supreme Court's decision transgresses United States Supreme Court precedent. Here, that standard is not met, because Petitioner's claim presents a novel question for which no United States Supreme Court precedent exists.

### C. *Petitioner's Arguments of Wrongful Parole Denial and Impossibility*

As determined above, this Court cannot pass judgment on the question of whether Petitioner's parole was rightfully or wrongfully denied, or make findings of fact as to reasons for denial. Federal court review of state parole decisions is unavailable unless there are allegations that Petitioner was denied parole or entry into the SOTP for constitutionally impermissible reasons, such as race, religion, or sexual orientation, which are not alleged here.[4]

---

[4] Even then, the threshold question would be whether such claims could be brought in a habeas corpus action, or should be brought in a federal civil rights action. *See Bogovich v. Sandoval*, 189 F.3d 999, 1003–04 (9th Cir. 1999).

**MEMORANDUM DECISION AND ORDER - 14**

Were the Court to consider the merits of Petitioner's arguments, it would agree with the state courts that the claims are meritless. Petitioner's argument that he would have been released on parole "but for" sex offender treatment reflects a misunderstanding of the nuances of parole for sex offenders. Petitioner has been evaluated for suitability for parole three times, but, instead of being placed in the category of offenders who receive "a tentative release date subject to satisfactory completion of an SOTP," he was placed in the category of offenders whose crimes are so serious, even completion of an SOTP may not be enough to warrant parole. (Affidavit of Olivia Craven, Dkt. 9-2, Exhibit B-6.) This is a rational and appropriate way to classify offenders, so that the IDOC can identify which offenders are more likely to be paroled and place them into the limited SOTP positions first. IDOC practice or custom is that "[t]hose offenders who have the closest release dates have the highest priority to attend," and "ranking is based upon release date." (Dkt. 9-2, Exhibit B-5.)

Nothing in the record reflects that the ICPP and IDOC are engaged in a game of nonsense that makes it impossible for otherwise qualified inmates to enter the SOTP or obtain parole, as Petitioner suggests. Rather, both the ICPP and the IDOC are engaged in a reasonable plan of allocating limited taxpayer resources to those inmates who are more likely to be granted parole. It is clear from the record that the ICPP, after taking evidence and having discussion at the parole hearings, came to the conclusion that Petitioner was unsuitable for parole and would be further assessed for suitability only after he completed rehabilitative treatment. If Petitioner would have been found potentially suitable for

**MEMORANDUM DECISION AND ORDER - 15**

parole, he would have been given a tentative parole date, opening the door to more immediate placement in the SOTP.

Petitioner has not shown that parole is impossible. He has shown that, for some inmates, parole is improbable, but prison officials nevertheless place such inmates on the waiting list for the SOTP, though in a non-priority position. Petitioner's false sense of entitlement to parole began with his view that he had a right to have his prison sentence be measured by the fixed portion of his sentence rather than the entire length of it. However, no right or entitlement is built into Idaho's sentencing and parole scheme. A convicted sex offender whose sentence includes an indeterminate term is deemed suitable for *consideration* of parole after completion of his fixed term, but he is not deemed suitable for parole automatically. A convicted sex offender deemed potentially suitable for parole by the ICPP is given a tentative parole date (which places him near the top of the SOTP waiting list), but, even after the granting of a tentative parole date, there is no right or entitlement to parole. *See Brandt v. State*, 878 P.2d 800 (Idaho Ct. App. 1994). Neither is every sex offender suitable for parole.

It is unfortunate that there are not more open seats in the SOTP, and that Petitioner's position on the waiting list was moved from #55 to #329. (Dkt. 10-2, p. 8.) However, this Court agrees with the state court's assessment that Petitioner's argument boils down to nothing more than an assertion that, after being deemed unsuitable for parole, he has a right to rehabilitation, which is unsupported in the law. *See Bauman v. Arizona Dep't of Corrections*, 754 F.2d 841, 844 (9th Cir. 1985) (no constitutional right

**MEMORANDUM DECISION AND ORDER - 16**

to work furlough classification); *Hoptowit v. Ray*, 682 F.2d 1237, 1254-55 (9th Cir. 1982) (no general right to rehabilitation);[5] *Balla v. Idaho State Board of Corrections*, 869 F.2d 461 (9th Cir.1989) (it is established that Idaho's purpose in sentencing is punitive and the state is not required to provide treatment for sex offenders).

D. *Denial of in Forma Pauperis Status*

Petitioner also argues that his right to due process and equal protection were violated by the fact that the Idaho Supreme Court did not permit him to pursue his state habeas corpus appeal. The denial of Petitioner's in forma pauperis application on frivolousness grounds in his state habeas corpus appeal is not a cognizable federal habeas corpus claim. Habeas corpus is not the proper avenue to address errors in a state's post-conviction (or habeas) review process. *Franzen v. Brinkman*, 877 F.2d 26 (9th Cir. 1989), *cert. denied*, 493 U.S. 1012 (1989).

For purposes of this action, to the extent that the Idaho Supreme Court's decision is considered a rejection of the merits of Petitioner's claims, he has received due process and was not denied equal protection. Rather, he simply lost the merits of his appeal in a summary fashion. Not every appeal is won, and the Idaho Supreme Court issues a great many summary rejections each year, whether in the manner Petitioner's case was rejected or simply by denying petitions for review. The Idaho Supreme Court's dismissal of Petitioner's claims opened the door to federal habeas corpus review, to the extent that the

---

[5] *Hoptowit* was abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995) (setting forth due process liberty interest test).

claims are cognizable here. Unfortunately for Petitioner, this Court agrees with the state courts' assessment that the claims lack merit.

**4.     Conclusion**

For the reasons set forth above, the Petition for Writ of Habeas Corpus is subject to dismissal for failure to state a claim or denial on the merits of the claims. As a result, Petitioner's case will be dismissed with prejudice.

## REVIEW OF THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the Order and Judgment in this case, the Court now evaluates the claims within the Petition for suitability for issuance of a certificate of appealability (COA), which is required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); Rule 11(a), Rules Governing Section 2254 Cases.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed the petition or claim on the merits, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has summarily dismissed Petitioner's claims for failure to state a claim upon which relief can be granted and alternatively denied them on the merits. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record again, the Court concludes that reasonable jurists would not find debatable the Court's decision and that the issues presented are not adequate to deserve encouragement to proceed further. As a result, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court, and simultaneously file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b), **within thirty (30) days after entry of this Order**.

## ORDER

**IT IS ORDERED:**

1. Petitioner's Petition for Writ of Habeas Corpus (Dkt. 1) is DENIED and DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 19**

2.	Petitioner's Objection, or "Motion to Reconsider" (Dkt. 5), has been considered, and is DENIED.

3.	The Court will not grant a certificate of appealability in this case. If Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to forward a copy of this Order, the record in this case, and Petitioner's notice of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED: **September 11, 2014**

_Edward J. Lodge_
Honorable Edward J. Lodge
U. S. District Judge